## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

WILLIE ORLANDO McKINNON,

    Plaintiff,

    v.

COUNTY EXECUTIVE MARC ELRICH,
POLICE CHIEF MARCUS JONES,
DETECTIVE BRIAN DYER,

    Defendants.

Civil Action No.: BAH-24-283

## MEMORANDUM OPINION

Self-represented Plaintiff Willie Orlando McKinnon, an inmate at Maryland Correctional

Training Center in Hagerstown, Maryland, filed this civil rights complaint pursuant to 42 U.S.C.

§ 1983, alleging Defendants violated his Fourth, Eighth, and Fourteenth Amendment rights. ECF

1 and 14. Defendants County Executive Marc Elrich, Chief of Police Marcus Jones, and Detective

Brian Dyer filed a Motion to Dismiss or, to the Extent Denied, Motion to Stay Remaining Claims

on March 29, 2024. ECF 11. Following the filing of McKinnon's supplemental complaint,[1]

Defendants filed a second Motion to Dismiss Amended Complaint or, to the Extent Denied,

Motion to Stay Remaining Claims. ECF 15. McKinnon opposes the Motion (ECF 17); Defendants

replied (ECF 20). Also pending is McKinnon's Motion to Amend Complaint. ECF 24.

Defendants oppose the Motion. ECF 25. No hearing is necessary. *See* Local Rule 105.6 (D. Md.

---

[1] While McKinnon states that he wants to "amend [his] complaint" (ECF 14), it does not appear
that McKinnon intended to replace the allegations in his complaint but rather seeks to add an
Eighth Amendment claim. Therefore, the Court construes it as a supplement to the complaint
rather than an amended complaint. Accordingly, the Court will consider Defendants' Motions,
which address the original and supplemental complaint separately, as one.

2023). For the reasons stated below, Defendants' Motions are granted and McKinnon's Motion is denied.[2]

## I.   BACKGROUND

McKinnon alleges that Defendants Elrich and Jones have a practice of allowing police officers and detectives "to bogusely [sic] or over charge defendants of crimes that they didnt [sic] commit without any real fear or consequences." ECF 1-1 at 1. He asserts that they are liable in their capacities as supervisors and that Detective Dyer conducted an unreasonable search and seizure and thus falsely arrested and imprisoned McKinnon. *Id.* He asserts that Dyer made false statements to a commissioner to obtain an unsupported arrest warrant. *Id.* According to McKinnon, Dyer told the commissioner that two suspects produced a knife in the course of the robbery. *Id.* at 2. However, at his trial, the video evidence showed that no robbery ever took place. *Id.* McKinnon states that he was detained at Montgomery County Correctional Facility for about two years for a crime he did not commit. ECF 14 at 2. He contends that there are no consequences imposed on officers by their superiors for such conduct. *Id.* at 3.

McKinnon was arrested on January 30, 2021, on two counts of first-degree assault and two counts of armed robbery. ECF 1-1 at 2. The assault charges were dismissed on March 28, 2021; he was indicted on the armed robbery charges. *Id.* McKinnon states that he was later acquitted on January 10, 2023. *Id.* However, in a Status Update submitted to the Court on December 30, 2024, he notes that his first-level appeal of his conviction was unsuccessful, contradicting his claim that he was acquitted of these charges. ECF 26. McKinnon seeks monetary damages. ECF 1 at 3.

---

[2] McKinnon's Motion requests to amend the complaint to "increase the amount of compensations and punitive damages." ECF 24 at 1. He states that he seeks more because of the evidence he has obtained to support his claims. *Id.* As McKinnon's claims will be dismissed, the Motion will be denied.

## II.    STANDARD OF REVIEW

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted).

Ordinarily, in ruling on a Rule 12(b)(6) motion, a court may consider only the complaint and any attachments to it. *Sec'y of State For Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). The Court may also consider documents attached to the motion if they are integral to the complaint and authentic. *Id.* Because McKinnon attaches part of the Statement of Probable Cause to his complaint (ECF 1-2 at 2), the Court finds that it is integral to the Complaint and will consider it in whole as attached to Defendants' Motion (ECF 11-3). Additionally, because McKinnon references his criminal charges, the Court will consider the public records attached, including the Statement of Charges (ECF 11-4) and verdict sheet (ECF 11-5).

The Court is mindful that McKinnon is a self-represented litigant. A federal court must liberally construe pleadings filed by pro se litigants to allow them to fully develop potentially meritorious cases. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But liberal construction does

3

not mean a court can ignore a clear failure in the pleadings to allege facts which set forth a claim.

*See Weller v. Dep't of Soc. Servs. for City of Baltimore*, 901 F.2d 387, 391 (4th Cir. 1990).

## III.    ANALYSIS

Defendants assert that this case should be dismissed with prejudice as prohibited claim-splitting or, alternatively, because McKinnon fails to state a claim. ECF 15-1. Additionally, Defendants argue that should any of McKinnon's claims not be dismissed, they should be stayed pending the resolution of McKinnon's active criminal charges. *Id.*

### A.  Claim Splitting

Defendants assert that the complaint and supplement in this case concern "practically the same" parties, forum, and underlying conduct as the complaint in Civil Action No. BAH-21-CV-1828 (hereafter "*McKinnon I*"). ECF 15-1 at 9. They state that this case (hereafter "*McKinnon II*") differs only in that McKinnon has now stated "additional theories related to the alleged unconstitutionality of his January 30, 2021 arrest, and two other County employees as defendants." *Id.*  In *McKinnon I*, McKinnon sued County Executive Marc Elrich and Montgomery County Police Officer Michael Schmidt challenging the constitutionality of his January 30, 2021, arrest.

The allegations in *McKinnon I* were summarized by the Court in a Memorandum Opinion issued July 12, 2022, as follows:

> On January 30, 2021 at approximately 1:45 a.m., McKinnon exited a store and entered a car driven by Emmanuel Harried. ECF No. 6-1 at 1. Members of Montgomery County Police Department's Special Assignment Team ("SAT") immediately surrounded the car to arrest the two men. *Id.* Officers demanded that McKinnon raise his hands and place them on the car window. *Id.* Officer Schmidt next used a metal bar to shatter the car windows, striking McKinnon's right elbow twice in the process. *Id.* Officers ultimately arrested McKinnon and charged him with theft, armed robbery, and a variety of related offenses.
>
> During post-arrest questioning, McKinnon told officers that his elbow was hurting, but none attended to his complaints. ECF No. 6-1 at 2. Ultimately, McKinnon's injuries were serious enough that he lost function in his right hand, partially

4

paralyzing one of his fingers and causing pain in his hand and wrist. *Id.* Although McKinnon avers that the criminal charges had been "dropped," *id.* at 2, court records reflect that the criminal trial is set for January 3, 2023. *See* Case No. 138299C, Montgomery County Circuit Court, [available at: https://casesearch.courts.state.md.us/casesearch/] (last visited July 6, 2022).

*McKinnon I*, ECF 29 at 1-2. All claims in *McKinnon I* were dismissed except the excessive force claim against Officer Schmidt, which was stayed pending resolution of McKinnon's state criminal action. *Id.* at 6-7. *McKinnon I* remains stayed while McKinnon's conviction is on appeal. *See id.* at ECF 42.

"Like res judicata, claim splitting 'prohibits a plaintiff from prosecuting its case piecemeal, and requires that all claims arising out of a single wrong be presented in one action.'" *Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, 452 F. Supp. 2d 621, 626 (D. Md. 2006), *aff'd*, 273 F. App'x 256 (4th Cir. 2008) (quoting *Myers v. Colgate-Palmolive Co.*, 102 F. Supp. 2d 1208, 1224 (D. Kan. 2000)). "Thus, when a suit is pending in federal court, a plaintiff has no right to assert another action 'on the same subject in the same court, against the same defendant at the same time.'" *Id.* (quoting *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138–39 (2d Cir. 2000)).

> The rule against claim splitting acts to bar successive litigation if it: (1) "involves the same parties or their privies," and (2) "'arises out of the same transaction or series of transactions' as the first claim." *Sensormatic Sec. Corp.*, 452 F. Supp. 2d at 626. The Court's central inquiry is whether the second suit raises issues that could and should have been brought in the first. *Lacy v. Nat'l R.R. Passenger Corp.*, 2014 WL 6967957, at *6 (D. Md. Dec. 8, 2014) (unpublished), *aff'd*, 600 F. App'x 127 (4th Cir. 2015); *see also Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, 329 F. Supp. 2d 574, 582 (D. Md. 2004). If the rule against claim splitting applies, a court may stay the second suit, dismiss the suit, or consolidate the actions. *Mason v. Montgomery County*, 2015 WL 3891808 (D. Md. June 23, 2015).

*Brightview Grp., LP v. Glynn*, Civ. No. SAG-21-3027, 2022 WL 743937, at *6 (D. Md. Mar. 11, 2022).

Here, this action arises out of the same transaction as *McKinnon I* – McKinnon's January 30, 2021, arrest by the Montgomery County Police Department. Furthermore, Defendant Elrich

is named as a defendant in both suits. As such, McKinnon could and should have brought all his claims against Elrich in *McKinnon I*. The Court turns to whether Defendants Jones and Dyer stand in privity to the *McKinnon I* Defendants before deciding how this case should proceed. Relevant here, privity is determined by considering:

> the closeness of relationship and legal interests between the parties in the first and second suits. *See Meisner v. Zymogenetics, Inc*, No. 3:15-CV-3523-CMC, 2016 WL 4858741, at *4 (D.S.C. Sept. 15, 2016) ("For res judicata, privity 'is merely a word used to say that the relationship between one who is a party on the record and another is close enough to include that other within the res judicata.'") (quoting *Nash County Bd. of Educ. v. Biltmore Co.*, 640 F.2d 484, 494 (4th Cir. 1981)). Courts have accordingly recognized privity between entities and their employees, *see id.* (citing *Kayzakian v. Buck*, 865 F.2d 1258 (4th Cir. 1988) (unpublished))...In all instances, the relevant inquiry focuses not on the parties' formal titles or affiliations, but on whether the interests of the parties are precisely aligned with respect to the litigation.

*Brightview Group, LP*, 2022 WL 743937, at *9.

The Fourth Circuit has held that "[t]o be in privity with a party to a former litigation, the non-party must be 'so identified in interest with a party to former litigation that he represents precisely the same legal right in respect to the subject matter involved.'" *Martin v. Am. Bancorporation Ret. Plan*, 407 F.3d 643, 651 (4th Cir. 2005) (citation omitted). "There are three generally recognized categories of non-parties who will be considered in privity with a party to the prior action and who will therefore be bound by a prior adjudication: (1) a non-party who controls the original action; (2) a successor-in-interest to a prior party; and (3) a non-party whose interests were adequately represented by a party to the original action." *Id.* (citing 18A Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction 2d* § 4448 (2d ed. 2002)).

Defendants contend that Jones and Dyer stand in privity with Officer Schmidt and Marc Elrich in *McKinnon I* simply because they are also Montgomery County employees. ECF 15-1 at 10. They contend that Elrich, as County Executive, is representative of Montgomery County and

6

thus as employees of Montgomery County, Jones and Dyer are in privity with Elrich. *Id.* Defendants' argument hinges on their assertion that the Court in *McKinnon I* "interpreted and analyzed the claim against the County Executive as if [McKinnon] intended to state a claim against the County through its Chief Executive, and found that Plaintiff had failed to state a viable claim against the County." *Id.* However, this is an overstatement of the Court's ruling. In *McKinnon I*, Elrich was dismissed because McKinnon failed to make any claim of wrongdoing by Elrich and failed to establish supervisory liability. *See McKinnon I*, ECF 29 at 3-4. Only then did the Court liberally construe McKinnon's allegations as possibly against the County and dismiss them for failure to state a claim.

The Court cannot find that either Elrich or Schmidt represented "precisely the same legal right" as Jones and Dyer with respect to McKinnon's allegations regarding the January 30, 2021 arrest. No allegations were made against Elrich in *McKinnon I* and the allegations against Schmidt concerned excessive force during his arrest and his treatment in detention thereafter. Thus, neither represents the legal rights of Jones and Dyer which concern the constitutionality of the arrest warrant obtained and which led to McKinnon's incarceration. Jones and Dyer therefore do not stand in privity and the claims against them do not violate the rule against claim splitting. Only the claim against Elrich, who was named in *McKinnon I* will be dismissed on this basis. The Court otherwise turns to whether McKinnon has adequately stated claims against Jones and Dyer.

## B.  Failure to State a Claim

### 1.  Defendant Jones

McKinnon alleges that Jones is liable in his supervisory capacity for having a custom or practice of allowing his officers to over charge individuals or charge them for crimes they did not commit. ECF 1-1 at 1. He asserts that Jones failed to institute any consequences for officers who

7

abused their power or violated constitutional rights. *Id.* McKinnon asserts only that Jones is the "top of this chain of command." ECF 14 at 3.

Liability under § 1983 attaches only upon personal participation by a defendant in the constitutional violation. It is well established that the doctrine of respondeat superior does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004). Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). Supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

McKinnon fails to allege that Jones had actual or constructive knowledge of the allegedly unconstitutional actions taken by Dyer. He otherwise comes to the conclusion, without providing any factual support, that he tacitly authorized Dyer's actions by failing to hold Dyer accountable for charging him with a crime he allegedly did not commit. Accordingly, the Complaint and Supplement must be dismissed against Jones for failure to state a claim.

### 2. Defendant Dyer

The Complaint and Supplement allege that Dyer violated McKinnon's Fourth, Eighth, and Fourteenth Amendment rights. ECF 1 and 14. Because all of McKinnon's claims concern conduct which occurred while he was a pretrial detainee, his Eighth Amendment claims are properly construed under the Fourteenth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 545 (1979) (The protections afforded convicted prisoners under the Eighth Amendment extend to pretrial detainees through the Due Process Clause of the Fourteenth Amendment because due process proscribes punishment of a detainee before a proper adjudication of guilt). McKinnon's Fourth and Fourteenth Amendment claims must be dismissed for failure to state a claim.

In his Complaint, McKinnon alleges that Dyer violated his Fourth and Fourteenth Amendment rights for his part in obtaining the arrest warrant which resulted in McKinnon's alleged false arrest and imprisonment. A Fourth Amendment claim cannot be sustained on these allegations because McKinnon fails to allege that Dyer personally arrested or seized McKinnon on January 30, 2021. *See Safar v. Tingle*, 859 F.3d 241, 246 (4th Cir. 2017) (finding that a false arrest claim cannot be stated where the defendant did not take part in the actual seizure and the arresting officer acted on a facially valid warrant); *see also Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (stating that for an individual defendant to be held liable pursuant to 42 U.S.C. § 1983, the plaintiff must affirmatively show that the official acted personally to deprive the plaintiff of his rights). Similarly, McKinnon's Fourteenth Amendment claim cannot proceed based on McKinnon's unsupported conclusory statement that he "was not treated like a[n] equal citizen." ECF 1-1 at 3.

As to McKinnon's claim regarding Dyer's alleged false statement to obtain an arrest warrant, the attachments to his pleadings and publicly available records contradict his statements.

While McKinnon asserts that Dyer wrote in the Statement of Probable Cause that *two* suspects presented knives at the scene, ECF 1, at 2, a review of the actual document reflects that Dyer actually wrote that *"[o]ne* of the subjects produced a knife and announced the robbery," ECF 1-2 at 2 (emphasis added). This information was obtained from the victims of a robbery on January 24, 2021. *Id.* While McKinnon seems to focus on this singular detail, the Statement of Probable Cause chronicles a series of events between January 12 and January 30, 2021. ECF 11-3. McKinnon was ultimately charged with armed robbery and first-degree assault. ECF 11-4 at 1. The State of Maryland did not pursue the first-degree assault charges and instead indicted McKinnon for armed robbery and other related conspiracy and theft charges; he was found guilty on 17 total charges, including armed robbery. ECF 11-5. As McKinnon's allegations regarding Dyer's false statements and that he proved his innocence are contradicted on the face of the pleadings, the Court must dismiss his claim.

Finally, in his Supplement, McKinnon alleges that Dyer subjected him to cruel and unusual punishment "when [] Dyer made those facts about a crime that never happen according to the probable cause statement that he gave to the commissioner for a tainted arrest warrant...." ECF 14 at 1. McKinnon asserts Dyer knew that this would result in Dyer's arrest and his inability to obtain bond causing him to be improperly incarcerated for two years while his case proceeded to trial. *Id.* at 2.

Conditions that "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment in violation of the Eighth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). "[N]ot every inconvenience encountered during pretrial detention amounts to 'punishment' in the constitutional sense." *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988) (citing *Bell*, 441 U.S. at 538–40). To state a § 1983 claim based on

unconstitutional conditions of confinement, a pretrial detainee must allege "that the condition or restriction was imposed with an express intent to punish or was not reasonably related to a legitimate nonpunitive government objective." *Timms v. U. S. Att'y Gen.*, 93 F.4th 187, 191 n.8 (4th Cir. 2024) (citing *Matherly v. Andrews*, 859 F.3d 264, 275 (4th Cir. 2017)); *see also Short v. Hartman*, 87 F.4th 593, 611 (4th Cir. 2023) (noting plaintiff can state a claim based on a "governmental action" that "is not 'rationally related to a legitimate nonpunitive governmental purpose' or is 'excessive in relation to that purpose'"). Simply put, "it is sufficient that the plaintiff show that the defendant's action or inaction was . . . objectively unreasonable.'" *Short*, 87 F.4th at 611 (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015)).

While McKinnon generally challenges that his arrest and detention occurred, he does not allege any facts which show that Dyer subjected him to unconstitutional conditions of confinement. Further, none of his allegations suggest that Dyer was responsible for imposing any punishment on McKinnon while detained nor that Dyer acted with any intent to punish him.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motions (ECF 11 and 15) are granted and McKinnon's Motion to Amend Complaint (ECF 24) is denied. The Complaint as supplemented is dismissed. A separate Order follows.

2/18/2025                                            _____/s/_____
Date                                                 Brendan A. Hurson
                                                     United States District Judge

11